J-A05009-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| B.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| M.D. | : | |
| | : | |
| Appellee | : | No. 1292 WDA 2018 |

Appeal from the Order Dated August 8, 2018
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): FD18-007885

BEFORE: GANTMAN, P.J.E., SHOGAN, J., and MURRAY, J.

MEMORANDUM BY GANTMAN, P.J.E.:                FILED MARCH 18, 2019

Appellant, B.D. ("Father"), appeals from the order entered in the Allegheny County Court of Common Pleas, which granted primary physical custody of the parties' three minor children ("Children"), to Appellee, M.D. ("Mother"), and granted Mother's petition for relocation. We affirm.

The relevant facts and procedural history of this case are as follows. Father and Mother married in Florida in 2007, and later they moved to Pennsylvania. During their marriage, the parties had three children. Following a tumultuous relationship involving alcoholism, anger issues, and abuse by Father toward Mother, the parties separated in January 2018. Since their separation, Mother has had sole physical custody of Children; and Father has paid no support since April 2018. The parties are in the process of divorce.

On July 6, 2018, Mother filed a Protection from Abuse ("PFA") order

against Father, based on a threatening text message. A few days later, on July 10, 2018, Father filed a custody action requesting shared physical custody. On July 13, 2018, Mother filed an answer and counterclaim for primary custody and a notice of relocation, as Mother had received a job offer in Florida. Father filed a counter affidavit regarding the relocation on July 18, 2018. The following day, the parties entered into a consent order to resolve the pending PFA action against Father. The court also scheduled an expedited hearing for August 2, 2018. Following the scheduled hearing, the court issued an order and opinion on August 8, 2018, granting Mother's relocation request and establishing the post-relocation custody schedule. The custody arrangement provided for Mother to exercise physical custody of Children in Florida during the school year, while Father would exercise custody in Allegheny County for summer break, as well as during holidays. On September 7, 2018, Father timely filed a notice of appeal and a contemporaneous concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925.

Father raises the following issue on appeal:

> WHETHER THE TRIAL COURT ERRED IN GRANTING MOTHER'S PETITION FOR RELOCATION FOR SIX RELATED REASONS, WHICH FATHER ARGUES AS SUBPARTS IN HIS BRIEF ON APPEAL?

(Father's Brief at 5-6).

In reviewing a child custody order:

> [O]ur scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

S.J.S. v. M.J.S., 76 A.3d 541, 547-48 (Pa.Super. 2013) (internal citation omitted). Additionally,

> [O]ur Legislature adopted a new Child Custody Act ("Act"), effective on January 24, 2011. See 23 Pa.C.S.A. §§ 5321– 5340. The new Act applies to "disputes relating to child custody matters" filed after the effective date of the new law. 23 Pa.C.S.A. § 5321. In E.D. v. M.P., 33 A.3d 73, 76 (Pa.Super. 2011), we held that the Act applied to any proceeding, including a petition for relocation, initiated by a filing made after the effective date of the Act.

Id. With respect to a custody order, Section 5328(a) provides:

> § 5328. Factors to consider when awarding custody
>
> (a) Factors.—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
>> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>>
>> (2) The present and past abuse committed by a party

- 3 -

or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness

or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a). In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." M.J.M. v. M.L.G., 63 A.3d 331, 336 (Pa.Super. 2013), appeal denied, 620 Pa. 710, 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant custody factors, complies with Section 5323(d). Id.

The new Act defines "Relocation" as "[a] change in residence of the child which significantly impairs the ability of a non-relocating party to exercise custodial rights." 23 Pa.C.S.A. § 5322(a); C.M.K. v. K.E.M., 45 A.3d 417, 422-25 (Pa.Super. 2012). Section 5337 sets forth the procedures and factors governing relocation in relevant part as follows:

§ 5337. Relocation

(a) Applicability.—This section applies to any proposed relocation.

(b) General rule.—No relocation shall occur unless:

(1) every individual who has custody rights to the child consents to the proposed relocation; or

(2)  the court approves the proposed relocation.

(c)  Notice.—

(1)  The party proposing the relocation shall notify every other individual who has custody rights to the child.

(2) Notice, sent by certified mail, return receipt requested, shall be given no later than:

(i)  the 60th day before the date of the proposed relocation; or

(ii)  the tenth day after the date that the individual knows of the relocation, if:

(A)  the individual did not know and could not reasonably have known of the relocation in sufficient time to comply with the 60–day notice; and

(B)  it is not reasonably possible to delay the date of relocation so as to comply with the 60–day notice.

(3) Except as provided by section 5336 (relating to access to records and information), the following information, if available, must be included with the notice of the proposed relocation:

(i)  The address of the intended new residence.

(ii)  The mailing address, if not the same as the address of the intended new residence.

(iii)  Names and ages of the individuals in the new residence, including individuals who intend to live in the new residence.

(iv)  The home telephone number of the intended new residence, if available.

(v)  The name of the new school district and school.

(vi) The date of the proposed relocation.

(vii) The reasons for the proposed relocation.

(viii) A proposal for a revised custody schedule.

(ix) Any other information which the party proposing the relocation deems appropriate.

(x) A counter-affidavit as provided under subsection (d)(1) which can be used to object to the proposed relocation and the modification of a custody order.

(xi) A warning to the nonrelocating party that if the nonrelocating party does not file with the court an objection to the proposed relocation within 30 days after receipt of the notice, that party shall be foreclosed from objecting to the relocation.

(4) If any of the information set forth in paragraph (3) is not known when the notice is sent but is later made known to the party proposing the relocation, then that party shall promptly inform every individual who received notice under this subsection.

(d) Objection to proposed relocation.—

(1) A party entitled to receive notice may file with the court an objection to the proposed relocation and seek a temporary or permanent order to prevent the relocation. The nonrelocating party shall have the opportunity to indicate whether he objects to relocation or not and whether he objects to modification of the custody order or not. If the party objects to either relocation or modification of the custody order, a hearing shall be held as provided in subsection (g)(1). The objection shall be made by completing and returning to the court a counter-affidavit, which shall be verified subject to penalties under 18 Pa.C.S. § 4904 (relating to unsworn falsification to authorities), in substantially the following form...

\*     \*     \*

(h) Relocation factors.—In determining whether to

- 7 -

grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1)  The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2)  The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3)  The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4)  The child's preference, taking into consideration the age and maturity of the child.

(5)  Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6)  Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7)  Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8)  The reasons and motivation of each party for seeking or opposing the relocation.

(9)  The present and past abuse committed by a party or member of the party's household and

> whether there is a continued risk of harm to the child or an abused party.
>
> (10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(a)–(d) (h).  Moreover,

> [T]he party proposing relocation...bears the burden of proving relocation will serve the children's best interests.  See 23 Pa.C.S.A. § 5337(i).  Each party, however, has the burden of establishing "the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation."  23 Pa.C.S.A. 5337(i)(2).

S.J.S., supra at 551.  In all of these proceedings:

> [O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.
>
> > The parties cannot dictate the amount of weight the trial court places on evidence.  Rather, the paramount concern of the trial court is the best interest of the child.  Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

R.M.G., Jr. v. F.M.G., 986 A.2d 1234, 1237 (Pa.Super. 2009) (internal citations omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Cathleen Bubash, we conclude Father's issue merits no relief.  The trial court comprehensively discusses and properly disposes of the question presented. (See Trial Court Opinion, dated October 15, 2018, at 5-11) (finding: court

fully considered custody and relocation statutory factors, which favored Mother's relocation request and post-relocation custody schedule entered; evidence supported decision, based on safety and best interests of Children and benefits afforded to them through relocation with Mother). The record supports the court's decision; therefore, we see no reason to disturb it. Accordingly, we affirm based on the trial court opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/18/2019

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION

B. D.,

        Plaintiff,

    V.

M. D.,

        Defendant.

OPINION

No.: FD-18-007885-008
    Sup. Ct. No: 1292 WDA 2018

BY:

Honorable Cathleen Bubash
440 Ross Street
Suite 5036
Pittsburgh, PA 15219

COPIES TO:

Counsel for Plaintiff/Appellant

Robert Raver, Esq.
Pollock Begg Komar Glasser & Vertz
437 Grant St., Suite 501
Pittsburgh, PA 15219

Counsel for Defendant:

John J. Romza, Esq.
Law Offices of John J. Romza
3380 Babcock Blvd.
Pittsburgh, PA 15237

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## FAMILY DIVISION

B. D.,

                 Plaintiff,

    v.

M. D.,

                Defendant.

No.: FD-18-007885

Sup. Court No: 1292 WDA 2018

### OPINION

October 15, 2018                                   Judge Cathleen Bubash

Father B.D., (hereinafter "Father") has appealed from my August 8, 2018 Custody Order granting Mother M.D.'s (hereinafter "Mother") request to relocate to Tampa, Florida with the Parties' three minor children, (hereinafter "the Children"). My Order, entered after a one day trial, provided that Mother would exercise physical custody of the Children in Florida during the school year, with Father exercising custody in Allegheny County for the summer break, as well as during holidays. Because my Order was supported by the evidence presented and is in the best interest of the Children, it should be affirmed.

### Background

The Parties were married in Florida in 2007, after which they moved to Pittsburgh (TR. p. 21). Father's Mother lives in Pittsburgh. They separated on or about January 20, 2018. The Parties' children were aged 4, 5, and 9 at the time

2

of trial.[1] The marriage was a turbulent one with both sides testifying to arguments, which often resulted in violent altercations. Ultimately, on July 5, 2018, Mother filed an Emergency Protection from Abuse ("PFA") petition against Father which was resolved by way of a no-contact non-PFA consent Order on July 19, 2018 (TR. p. 27-28).[2]

At trial, I interviewed the children. Both Parties testified. Father introduced the testimony of a minister from the family church and Paternal Grandmother, who has been primarily the caretaker for the Children during the marriage and during Father's custody time.

Mother is a registered nurse, who was working part time at the date of trial and Father is employed full time as an ecologist. Mother was residing in the marital home with the Children, while Father was primarily living with his mother in Penn Hills, although he also rented an apartment close by. Mother testified that she could not be sure of Father's address. (TR. p. 25). Father's testimony, as well as Paternal Grandmother's, was unclear regarding when he began living with her and whether he also spent overnights at the apartment at times. TR. p. 138-140)

The Parties' versions of their marriage and separation differed. As will be discussed further below, Mother testified that Father often engaged in heavy drinking, in abuse, and in negligent parenting. Mother further testified that Father did not seek to exercise custody of the children after separation. Father testified that Mother kept the Children from him.

---

[1] The three Children all have varying levels of special needs. The oldest boy has had some behavioral issues but is a good student. The middle daughter suffers from selective mutism, an anxiety related disorder, and the younger boy has developmental speech delays, which may or may not be a result of impaired hearing.

[2] Mother filed for the PFA after receiving a text from Father which he claims was misconstrued. Father did not, however, deny previous acts of violence testified to by Mother, including the tearing of doors from their hinges (TR. p. 40-43).

3

Mother's testimony was more credible than Father's in most respects. I found that Father has not demonstrated independent capability as a parent. When he has custody of the children, he depends on his 78-year-old mother to provide them with care. I also found Mother's mostly unrefuted testimony regarding some of Father's actions with the Children during the marriage to be alarming.

I found that Mother's move to Florida will benefit her financially and personally and that the Children will benefit from the move as well. I found that the custody schedule proposed by Mother will serve to preserve the relationship between Father and the Children and that, should Father actually spend time with the Children when they are in Allegheny County, he is likely to have a more meaningful relationship with them than he has since the Parties' separation. Accordingly, I entered my August 8, 2018 Order, granting Mother's Petition to Relocate.

In deciding this case and fashioning my custody order, I carefully weighed the evidence presented and evaluated that evidence in light of the sixteen statutory custody factors of 23 Pa.C.S.A. §5328 as well as §5337's relocation factors. I found that custody factors 2, 3, 4, 9, 10, 12, and 14 favored Mother, while the other factors were mostly equally weighted. Additionally, the safety of the Children was entitled to the greatest weight in my analysis and I found that Father was not competent to ensure the safety of the Children without the assistance of his mother. With regard to the relocation factors, I found that factors 1, 2, 3, 6, 7, 8, and 9 favored Mother and that the Children's relocation with Mother was in their best interest.

On September 7, 2018, Father timely filed a Notice of Appeal and Concise Statement of Matters Complained of on Appeal. Father's assignments of errors read as follows:

4

"A. The trial court erred in granting Mother's Petition for Relocation pursuant to 23 Pa.C.S. 5337 by permitting Mother to relocate with the Parties three (3) children to Florida despite Mother failing to introduce any evidence, other than a mere job offer, that the relocation was in the children's best interest.

B. The trial court erred in finding that Mother could not find a full time nursing job in the Pittsburgh area, as Mother never testified to the same, never introduced documentation regarding her job search, but did testify that she had been working, at times, four (4) days a week since the Parties separation.

C. The trial court erred in granting Mother's Petition for Relocation despite Mother failing to have a plan if her relocation was granted, as evidenced by Mother testifying to different addresses at which she would reside, different schools that the children would attend, failing to state the doctors the children will see, and failing to provide a concrete plan for the children's care providers.

D. The trial court erred in granting Mother's Petition for Relocation despite making a specific finding that Mother has made disparaging remarks about Father in the presence of the Children.

E. The trial court erred in granting Mother's Petition for Relocation despite Mother failing to encourage a relationship between Father and the Children, such as inter alia, making a finding that Mother did not provide appropriate medical care to one the Parties' children.

F. The trial court erred in finding that the children will have an increased quality of life in Tampa, Florida because Mother has family in Orlando, which is one and a half to two hour away depending on traffic and with whom Mother has a strained relationship."


## Discussion


With any child custody case, including one involving relocation, the paramount concern is the best interests of the child. *See, Landis v. Landis*, 869 A.2d 1003 (Pa.Super.2005). This standard requires a case-by-case assessment of all of the factors that may legitimately affect the "physical, intellectual, moral and spiritual well-being" of the child. *Id.* When a custody dispute involves a request by

5

a party to relocate, the Superior Court has explained, "there is no black letter formula that easily resolves relocation disputes; rather, custody disputes are delicate issues that must be handled on a case-by-case basis." *Baldwin v. Baldwin*, 710 A.2d 610, 614 (Pa.Super.1998); *C.M.K. v. K.E.M.*, 2012 PA Super 76, 45 A.3d 417, 421 (2012).

In the instant case, neither parent presented as ideal, nor as patently unfit. Father, however, has demonstrated that, to date, he has not been a fully committed parent to his children, leaving their care primarily to Wife while the Parties were living together and to his mother since separation. Moreover, credible testimony was introduced that Father has a history of severe alcohol abuse, suffers from uncontrolled anger which has led to violence which he is only now beginning to address, and has engaged in behaviors which are dangerous to his children.

23 Pa.C.S.A. § 5328 requires that, in "ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child". 23 Pa. C.S.A. § 5337 also requires the court to give "weighted consideration to those factors which affect the safety of the child" when determining whether it is in the best interest of the children to grant or deny a party's petition for relocation.

I found, based on the evidence presented that the Children were safest in Mother's custody and weighted my analysis accordingly. Testimony was introduced, and not refuted, that Father lost the youngest Child at a park in 2016 when the Child was two years old, resulting in the Child crossing a street unattended (TR p. 31-32); that Father created a dangerous condition in 2017 by purposefully icing the front porch of the marital home, resulting in the Parties'

6

daughter falling and striking her head (TR. p. 32-33); and that he willfully left pain relievers where they could be accessed by the children (TR. p. 33-35).

Mother testified that Father often drank to the point of vomiting and would not clean it up. (TR. p. 46-48). Father admitted to drinking and vomiting and could not remember if he cleaned it up. (TR. p. 237-238). Mother testified to a number of incidences of abuse of both herself and the children. Father had different explanations for their injuries and denied abusing the Children, but he did not credibly deny the incidents involving Mother.

Because safety of the Children is entitled to the greatest weight in my analysis, the considerations raised by the testimony alone weigh heavily in Mother's favor, despite faults she has exhibited.[3] Nonetheless, I will address Father's separate assertions of errors below.

A. Children's Best Interest

Father asserts that Mother introduced only a "mere job offer" to demonstrate that the move would be in the Children's best interest. To the contrary, however, Mother also credibly testified, not only that the job offer in Florida offers her full time work with higher pay, benefits and the possibility of advancement, but that her efforts to obtain full time employment in Pittsburgh were previously thwarted by Father (TR. p. 57-58), that Paternal Grandmother has indicated she is unable to continue to provide consistent childcare which would require Mother to obtain paid childcare here (TR. p. 59), that she has friends and family in Florida whom her children know and who have offered to help with the Children (TR. p. 5, 10, 21-22, 67-68), and that Florida has no state income tax (TR. p. 55-56). She also testified that she has no family support system in Pittsburgh (TR.

---

[3] I also found, based on the evidence, that the Children were safe during Father's custody time since separation because they were also with his mother, with whom he claims to be living.

7

p. 38-39). From this evidence, I determined the relocation will substantially add to the quality of Mother's life and, consequently, to that of the Children.

## B. Lack of Full Time Work in Pittsburgh

Mother did not introduce documentation of a job search in the Pittsburgh area. She did, however, testify that she has been a registered nurse since 2010 (TR. p. 20) and that when she did work full-time as a nurse in Pittsburgh, she had to work weekends and evenings. She further testified that recent efforts to obtain full time work at UPMC were fruitless and that she has no health benefits available to her. Father's assertion that Mother works four days a week does not demonstrate that full time work is available to Mother nor does it address how she will afford health care after the divorce is finalized.

## C. Mother's Relocation Plan

Father next complains that it was error for me to grant Mother's petition when she did not have a plan for after relocation. Father asserts this is evidenced by the fact that the proposed address in Mother's petition differs from the address she testified to at trial. I find this argument to be disingenuous on Father's part. Mother credibly testified that after filing her relocation petition, she found a more suitable apartment for the family. Mother only recently received her job offer in Florida. She testified that she had not signed a lease prior to trial because she was awaiting this court's permission to relocate before committing to a 12-month lease. (TR. p. 80). I found Mother's testimony both credible and reasonable. I did not find that she did not have a plan, only that she had not signed a lease as she awaited my decision.

8

D. Mother's Disparaging Remarks

Paternal Grandmother credibly testified that Mother made disparaging remarks about Father in front of the Children. As in any case, this is unfortunate, and it is a practice which I have admonished Mother to stop. When weighing the factors, however, this bad behavior on Mother's part was outweighed by Father's parental shortcomings as well as by the benefit I found would come to the Children by relocating.

E. Encouraging a Relationship with Father

At E., Father complains that Mother has demonstrated a failure to encourage a relationship with Father due to her failure to obtain medical care for one of the Children. This is a false equivalency, as the two allegations are wholly unrelated. Mother did fail to address the youngest Child's likely hearing problem, as did Father until just before trial. This failure, however, does not go to Mother's likelihood of encouraging a relationship with Father, only to her competency as a parent.[4]

With regard to the Children's relationship with Father, Mother testified, quite credibly, that she attempted to provide Father with custody time with the Children to no avail. (TR. p. 26-27). She testified he did not spend time with them when they were ostensibly in his custody. This testimony was corroborated by the testimony of both Father and Paternal Grandmother, to whose home the Children went for their custody time with Father. Paternal Grandmother testified that Father would normally not arrive home from work until after 7 pm when the Children were getting ready for bed so he had little time with them. (TR. p. 142). Father, however,

---

[4] Mother indicated she has been overwhelmed by the stress of the divorce, the actions leading to the Parties' separation and the filing of the PFA and realizes she failed to address the Child's needs. She has scheduled an appointment with a specialist in Tampa for the youngest Child.

testified repeatedly that his schedule was flexible, that he was done with work by 4:30 pm and that he rarely worked weekends. (TR. p 178). He did not, however, spend that time with the Children and his whereabouts after work and on weekends was never explained. (TR. p. 233). Father did not make himself available for the Children even when he could. It is Father, in my estimation, who failed to strengthen his relationship with the Children by failing to spend meaningful time with them and leaving it to his mother to provide care for them.

F. Mother's Family in Florida

. Lastly, Father claims it was error for me to find the Children's lives will be enhanced by living closer to Mother's family in Florida because they live two hours away from her new home and have had a strained relationship with Mother.

The proximity of extended family is but one of the factors to be considered in the weighing of both the custody and relocation factors. I found it credible that Mother's family would be of assistance to her, as evidenced by the fact that, with very little notice, they came to Pittsburgh to help with the Children during the trial. Both Paternal Grandmother and Father attempted to demonstrate that Mother's parents would not be a help to her but I did not find them persuasive. Mother credibly testified that her Mother offered to be with the Children until such time as Mother successfully found appropriate before and after school childcare. Additionally, even if Mother's parents are not consistently available for childcare, their relative proximity to the Children, along with Mother's other relatives in the general area, will be a benefit to the Children who deserve to have a relationship with all of their relatives.

While I did consider the proximity of Mother's parents in my analysis, it was far from the most important factor. More important to my analysis was the safety

10

of the Children, their need to be cared for by a parent, and the benefits afforded to them by relocating.

## Conclusion

Because my August 8, 2018 Custody Order is supported by the evidence and serves the best interests of the Children, it should be affirmed.

BY THE COURT:

_____, J.

11